# APRIL TERM, 1913.*

JAPES v. HARMON.

1. CONTRACTS—BUILDING CONTRACTS—ACCEPTANCE OF WORK.

   The owner of a building in process of construction, who is compelled by the expiration of a lease held by him to occupy the premises before the work has been completed as required by his contract with the builder, does not thereby accept the building.

2. SAME—ARCHITECT'S CERTIFICATE—PAYMENT—ACCORD.

   Where defendant, in an action to recover a claimed balance due on a building contract, produced testimony to show that certain work and materials furnished were defective and the contractor had received his final certificate from the architect as payment in full, the amount remaining to be held by the owner to cover the cost of replacing the work objected to, it was not error to admit evidence of the contractor's agreement to accept such certificate in full satisfaction, and the court correctly instructed the jury that, in the absence of a denial by such contractor as to the alleged settlement, he could not recover.

Error to Wayne; Mandell, J. Submitted January 30, 1913. (Docket No. 89.) Decided May 29, 1913.

Assumpsit by Henry Japes against Claude M. Harmon for a balance due under a building contract. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Henry C. L. Forler,* for appellant.

*Chamberlain, May, Denby & Webster,* for appellee.

McALVAY, J. This is an action in assumpsit brought by plaintiff, as assignee, against the defendant in justice's court, and later appealed to the circuit court, where a verdict of no cause of action was directed. From a judgment entered upon such verdict, the case is removed to this court for review upon a writ of error.

Dettloff Bros. were contractors and builders in the city of Detroit and entered into a written contract with defendant to perform only the carpenter work, including the furnishing of all necessary material for a house being built by him. This suit is brought by plaintiff as assignee to recover a balance claimed to be due and unpaid upon Dettloff Bros.' contract. The contract price was $2,561, which, with certain extras allowed at $76.35, amounted to $2,637.35. The total of this amount, excepting $163, has been paid.

Mr. Stevens was the architect and superintendent of the building. This was the uniform building contract adopted by the American Institute of Architects, and in the contract and specifications provision was made that payments to the contractor should be made only upon the certificate of the architect and superintendent. No disagreement arose between the parties to this contract, except on account of certain cornice work, sash, and doors, which were furnished to the contractors by this plaintiff, who was engaged in that business. The matter of the cornice work was adjusted. Mr. Stevens, the superintendent, decided that the doors and sash were not according to specifications on account of certain defects. This objection was called to the attention of plaintiff by Dettloff Bros., and some steps were taken looking toward an adjustment between them by arbitration. This, however, was not consummated.

On April 17, 1907, Herman Dettloff, one of the contractors, representing his firm, went to the superin-

tendent for a final certificate. The matter of the imperfect doors was discussed between them, and a certificate for $174.35 was issued to Mr. Dettloff, presented to defendant, and paid by him. Mr. Dettloff had a conversation with defendant at the time it was paid. Soon afterwards Dettloff Bros. made an assignment of the balance now claimed by plaintiff to be due and unpaid on Dettloff Bros.' contract.

At the close of the case counsel for defendant moved for a directed verdict on the ground that under the contract payments were to be made by defendant only on the certificate of the superintendent, and that plaintiff, as assignee, received no such certificate, and that there was no evidence of fraud or collusion by the superintendent with the owner or bad faith on his part in withholding the certificate; that neither plaintiff nor his assignors ever requested or demanded from the superintendent a certificate covering this claim; that under the evidence in the case it appears that the difference between the contract price and the amount paid by agreement was retained to cover the cost of fixing or replacing the doors and sash; and also that the plaintiff under the contract could not recover upon a *quantum meruit*. Quite a number of errors are assigned and relied upon by appellant and discussed in his brief. The important contention made by him in the case is that the court was in error in directing a verdict against plaintiff.

It is important to state, before discussing the errors assigned, that the plaintiff is not correct in intimating that the building was accepted by defendant on March 1, 1907. It was not at that time completed for accepting. The defendant, Mr. Harmon, by force of circumstances, occupied this building before it was completed and accepted, having been forced to do so by the expiration of the lease of the premises then occupied by him.

It seems that the whole case turns upon the agreement claimed by defendant to have been made at the time the last certificate was issued to Dettloff Bros. to the effect that it was made out and accepted by Dettloff Bros. as a final payment due to them from defendant. The testimony of Mr. Stevens, the superintendent, is positive that the $163 was held back to cover the cost of fixing or replacing the doors and sash in question. He testifies as to his conversation with Mr. Dettloff, as follows:

"He came to me after the house had been completed and said he wanted to get his money, and he came to the office, and we had quite a little talk, and I said, 'What are you doing about the doors and sash?' and he said, 'You keep out what you think that is worth, and I will keep it out of Japes, but I want to get my money out of the job.' I said that was agreeable as far as we were concerned. I had to ask my client, and these matters had been promised to be fixed up, and I was willing to withhold the money until such time as he saw fit to fix them, and that was the understanding that this certificate was given absolutely.

"Q. That amount of money was agreed upon between you and Mr. Dettloff to hold out?

"A. Yes, sir.

"Q. $163?

"A. Yes, sir."

This was objected to and a motion made to strike it out, including all of the interview between Stevens and Dettloff, on the ground that the certificate speaks for itself. This was overruled.

Mr. Harmon testifies as to what occurred when he paid this certificate as follows:

"* * * And when he brought this in I understood from him that this was the final certificate for the last payment and I brought up the question of the doors and sash, and he said, Mr. Dettloff said to me, that he had made an agreement with Mr. Stevens, the architect, to hold this $163 to cover the cost or to replace the doors and the sash, being the rejected ma-

terial that the architect had rejected. I afterwards paid him $174.35. Mr. Dettloff said that he was going to hold out the amount of $155 which he owed Mr. Japes to cover this rejected material."

The testimony of Mr. Dettloff, who was a witness for plaintiff, shows that he was on friendly terms with Mr. Stevens, and says that he was paid this $174.35 the day he received the certificate for it. He testified as follows:

"*Q.* Do you remember going to Mr. Stevens a long time after the building had been turned over and telling him that you wanted to get this money that was paid to you on the 17th of April?

"*A.* Yes, sir; I think I must have told him I wanted to clean up there."

He testified later:

"*A.* I did understand why it was held back.

"*Q.* You agreed to that?

"*A.* I didn't really agree to it.

"*Q.* You didn't refuse it and insist upon a certificate?

"*A.* No, I had quite a little money coming, and I didn't refuse it."

The testimony above quoted of defendant Harmon and the superintendent was given before Mr. Dettloff had testified, and, although he was afterwards recalled twice as a witness, he did not deny the agreement or explain it in any way. The motion of plaintiff that the testimony of Mr. Stevens and Mr. Harmon was not admissible and should be stricken out was properly overruled by the court.

Plaintiff stands in the shoes of Dettloff Bros. as assignee of this claim. No further certificate has been requested by plaintiff or his assignors from the superintendent. It is apparent that at the time of this last payment Dettloff Bros. were desirous of cleaning up this matter, as Mr. Dettloff testified, and that this certificate was accepted by him as the superintendent and

defendant testified. Giving to Dettloff's testimony on the part of plaintiff its strongest probative force, it was not sufficient to warrant the submission of the case to the jury. The court was not in error in directing a verdict of no cause of action against plaintiff. The remaining questions presented by plaintiff do not require consideration.

The judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, and BIRD, JJ., concurred. OSTRANDER, J., did not sit.